**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**JENNIFER KING, individually, and on behalf of all others similarly situated,**

***Plaintiff,***

**vs.**

**CLASSIC CHEVROLET, INC.; BARTLESVILLE CDJ, LLC; BIXBY AUTO PLAZA, LLC; MIAMI AUTO SUPERCENTER, INC.; NISSAN OF MUSKOGEE LLC; REGIONAL HYUNDAI LLC; SUBURBAN CHEVROLET, INC.; TULSA RACEWAY PARK, LLC; WKW ACQUISITIONS LLC D/B/A HONDA OF MUSKOGEE,**

***Defendants.***
______________________________________/

**CASE NO. 19-cv-00429-CVE-JFJ**
**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

## AMENDED CLASS ACTION COMPLAINT

1. Plaintiff, Jennifer King, brings this action against Defendants, Classic Chevrolet, Inc. and its affiliated companies listed in Paragraphs 9 – 16, below (collectively referred to herein as "Defendants"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.

## NATURE OF THE ACTION

2. This is a putative class action pursuant to the TCPA.

3. Defendants are all automotive dealerships that sell vehicles for individuals and businesses. To promote their services, Defendants engage in unsolicited marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendants. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call, in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollar) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

6. Venue is proper in the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Defendants are deemed to reside in any judicial district in which they are subject to the court's personal jurisdiction, and because Defendants provide and market their services within this district thereby establishing sufficient contacts to subject them to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff occurred within the State of Oklahoma within the Northern District of Oklahoma and, on information and belief, Defendants have sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendants' acts in making such calls have occurred within this district, subjecting Defendants to jurisdiction in the State of Oklahoma and this judicial district.

## PARTIES

7. Plaintiff is a natural person who, at all times relevant to this action, was and is a resident of Tulsa County, Oklahoma.

8. Defendant Classic Chevrolet, Inc. is an Oklahoma corporation whose principal office is located at 8501 N. Owasso Expressway, Owasso, Oklahoma 74055. Defendant directs, markets, and provides its business activities throughout the State of Oklahoma.

9. Defendant Bartlesville CDJ, LLC is an Oklahoma limited liability company whose principal office is located at 3250 SE Washington Blvd, Bartlesville, Oklahoma 74006. Defendant directs, markets, and provides its business activities throughout the State of Oklahoma.

10. Defendant Bixby Auto Plaza, LLC is an Oklahoma limited liability company whose principal office is located at 15309 S Memorial Dr., Bixby, Oklahoma 7400. Defendant directs, markets, and provides its business activities throughout the State of Oklahoma.

11. Defendant Miami Auto Supercenter, Inc. is an Oklahoma corporation whose principal office is located at 1601 N Main St, Miami, Oklahoma 74354. Defendant directs, markets, and provides its business activities throughout the State of Oklahoma.

12. Defendant Nissan of Muskogee LLC is an Oklahoma limited liability company whose principal office is located at 841 N Main St, Muskogee, Oklahoma 74401. Defendant directs, markets, and provides its business activities throughout the State of Oklahoma.

13. Defendant Regional Hyundai LLC is an Oklahoma limited liability company whose principal office is located at 2380 W Kenosha St #8977, Broken Arrow, Oklahoma 74012. Defendant directs, markets, and provides its business activities throughout the State of Oklahoma.

14. Defendant Suburban Chevrolet, Inc. is an Oklahoma corporation whose principal office is located at 1300 South Lynn Riggs Blvd, Claremore, Oklahoma 74017. Defendant directs, markets, and provides its business activities throughout the State of Oklahoma.

15. Defendant Tulsa Raceway Park, LLC is an Oklahoma limited liability company whose principal office is located at 3101 N Garnett Rd, Tulsa, Oklahoma 74116. Defendant directs, markets, and provides its business activities throughout the State of Oklahoma.

16. Defendant WKW Acquisitions LLC d/b/a Honda of Muskogee is an Oklahoma limited liability company whose principal office is located at 240 W. Shawnee St, Muskogee, Oklahoma 74401. Defendant directs, markets, and provides its business activities throughout the State of Oklahoma.

**THE TCPA**

17. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

18. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

19. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

20. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

21. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

22. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent....and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

23. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

24. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

25. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

26. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

27. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

28. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

29. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of

showing that it obtained Plaintiff's prior express consent before sending him the ***text message***) (emphasis added).

30. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTS

31. Beginning on or about March 9, 2018, Defendant Classic Chevrolet, Inc. sent the following telemarketing text messages to Plaintiff's cellular telephone number ending in 3619 (the "3619 Number"):





83% 12:31 PM
77453
RESTORE
DELETE
Car Alert: Your eligibility to extend your Auto Warranty is set to expire. Call now to avoid Coverage Termination. 800-272-0149 Txt STOP to OptOut
83% 12:30 PM
77453
RESTORE
DELETE
Fri, Aug 10, 2018 4:34 PM
Classic Chevrolet: A Simple Way To Buy A Car o.zip.ma/1LXnh Txt STOP to OptOut




83% 12:30 PM
77453
RESTORE
DELETE
Thu, Sep 13, 2018 9:44 AM
Classic Chevrolet: " Huge discounts with low finance rates plus more for your trade" APPLY NOW o.zip.ma/1SyGc Txt STOP to OptOut
83% 12:29 PM
77453
RESTORE
DELETE
Thu, Oct 18, 2018 9:54 AM
Classic Chevrolet: October Sale going on now with lenders waiting all applications accepted click here o.zip.ma/1XAZq Txt STOP to OptOut

32. Defendant Classic Chevrolet, Inc.'s text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

33. Defendant Classic Chevrolet, Inc.'s text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff an automobile.

34. The information contained in the text message advertises Defendant Classic Chevrolet, Inc.'s sales, discounts, and specials, which Defendant Classic Chevrolet, Inc. sends to promote its business.

35. Plaintiff received the subject texts within this judicial district and, therefore, Defendant Classic Chevrolet, Inc.'s violation of the TCPA occurred within this district. Upon information and belief, Defendant Classic Chevrolet, Inc and the other named Defendants, listed in Paragraphs 9-16, caused other text messages to be sent to individuals residing within this judicial district.

36. At no point in time did Plaintiff provide Defendant Classic Chevrolet, Inc. with her express written consent to be contacted using an ATDS.

37. Plaintiff is the subscriber and sole user of the 3619 Number and is financially responsible for phone service to the 3619 Number.

38. Plaintiff has been registered with the national do-not-call registry since March 23, 2011.

39. The impersonal and generic nature of Defendant Classic Chevrolet, Inc.'s text message demonstrates that Defendant Classic Chevrolet, Inc. utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d

1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

40. The text messages originated from telephone number 77453, a number which, upon information and belief, is owned and operated by Defendant Classic Chevrolet, Inc.

41. The number used by Defendant Classic Chevrolet, Inc. (77453) is known as a "short code," a standard 5-digit code that enables Defendant Classic Chevrolet, Inc. to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

42. Short codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a short code.

43. Upon information and belief, the Defendants identified in Paragraphs 9-16, above, also caused other similar automated telemarketing text messages to be sent to individuals residing within this judicial district.

44. Specifically, upon information and belief, Defendants utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems

utilized by Defendants have the capacity to store telephone numbers using a random or sequential generator, and to dial such numbers from a list without human intervention.

45. Defendants unsolicited text messages caused Plaintiff and class members actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants text messages also inconvenienced Plaintiff and class members and caused disruption to their daily lives.

## CLASS ALLEGATIONS

### PROPOSED CLASS

46. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

47. Plaintiff brings this case on behalf of a Class defined as follows:

> **No Consent Class: All persons who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendants, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting Defendants' goods and services, and (4) for whom Defendants claim (a) they did not obtain prior express written consent, or (b) they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to call the Plaintiff.**
>
> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendants; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and services; and (5) for whom Defendants claim (a) they did not obtain prior express written consent, or (b) they obtained prior express written consent in the same manner as Defendants claim it supposedly obtained prior express written consent to call the Plaintiff.**

48. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

49. Upon information and belief, Defendants have placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

50. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

**COMMON QUESTIONS OF LAW AND FACT**

51. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

**(1)** Whether Defendants made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

**(2)** Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;

**(3)** Whether Defendants' conduct was knowing and willful;

**(4)** Whether Defendants are liable for damages, and the amount of such damages; and

**(5)** Whether Defendants should be enjoined from such conduct in the future.

52. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmit text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

53. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

54. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

55. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

56. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another

court may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

57. Plaintiff realleges and incorporates paragraphs 1-56, above, as if fully set forth herein.

58. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

59. Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

60. These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

61. Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

62. Defendants knew that they did not have prior express consent to make these calls and knew or should have known that they were using equipment that constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

63. As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id.*

**COUNT II**
**Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

64. Plaintiff realleges and incorporates paragraphs 1-63, above, as if fully set forth herein.

65. At all times relevant, Defendants knew or should have known that their conduct as alleged herein violated the TCPA.

66. Defendants knew that they did not have prior express consent to make these calls and knew or should have known that their conduct was a violation of the TCPA.

67. Because Defendants knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

68. As a result of Defendants' violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**COUNT III**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

69. Plaintiff realleges and incorporates paragraphs 1-68, above, as if fully set forth herein.

70. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

71. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).[1]

72. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

73. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

74. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

75. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf

---

[1] Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf.

of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

76. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and her counsel as Class Counsel;

b) An award of actual and statutory damages;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d) A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

e) An injunction requiring Defendants to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Classes;

f) An injunction prohibiting Defendants from using, or contracting for the use of, an automatic telephone dialing system without obtaining the recipient's consent to receive calls made with such equipment; and

g) Such further and other relief as the Court deems necessary.

**JURY TRIAL DEMAND**

Plaintiff and Class Members hereby demand a trial by jury.

Dated: March 11, 2020

Respectfully submitted by:

**WALLER JORGENSON, PLLC**
*/s/ Mark A. Waller*
Mark A. Waller, OBA 14831
J. David Jorgenson, OBA 4839
401 S. Boston, Suite 500
Tulsa, OK 74103
Email: mwaller@wjwattorneys.com
918-629-3350

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, Florida 33132
Telephone: 305-479-2299

**EISENBAND LAW, P.A.**
Michael Eisenband
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Florida Bar No. 94235
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
Email: mhiraldo@hiraldolaw.com
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954.400.4713

**IJH LAW**
Ignacio J. Hiraldo
Florida Bar No. 0056031
14 NE First Ave. 10th Floor
Miami, FL 33132
Email: ijhiraldo@ijhlaw.com
Telephone: 786.351.8709

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave #417
Aventura, FL 33180
Telephone: 305-975-3320

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12th, 2020, I electronically filed the foregoing document via the Court's online CM/ECF system, which subsequently transmitted notice of same to all parties and counsel of record.

*/s/ Mark A. Waller*
*Counsel for Plaintiff and the Class*