## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

JENNIFER KING, individually and on
behalf of all others similarly situated,

      Plaintiff,

vs.

CLASSIC CHEVROLET, INC.;
BARTLESVILLE CDJ, LLC;
BIXBY AUTO PLAZA, LLC;
MIAMI AUTO SUPERCENTER, INC.;
NISSAN OF MUSKOGEE LLC;
REGIONAL HYUNDAI LLC;
SUBURBAN CHEVROLET, INC.;
T & K MANAGEMENT GROUP, LLC d/b/a
TULSA RACEWAY PARK; and WKW
ACQUISITIONS LLC d/b/a HONDA OF
MUSKOGEE,

      Defendants.

Case No.: 4:19-cv-00429-CVE-JFJ

## PLAINTIFF'S AND CLASS COUNSEL'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR SERVICE AWARD, ATTORNEYS' FEES, AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Jennifer King initiated this action against Defendant Classic Chevrolet, Inc.; Defendant Bartlesville CDJ, LLC; Defendant Bixby Auto Plaza, LLC; Defendant Miami Auto Supercenter, Inc.; Defendant Nissan of Muskogee LLC; Defendant Regional Hyundai LLC; Defendant Suburban Chevrolet, Inc.; Defendant T & K Management Group, LLC d/b/a Tulsa Raceway Park; and Defendant WKW Acquisitions LLC d/b/a Honda of Muskogee (collectively, the "Defendants") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), claiming that Defendants initiated a text message campaign in which text messages were sent to Plaintiff and approximately 118,373 unique cell phone numbers.[1] The Parties negotiated a settlement on behalf of Plaintiff and a class of approximately 118,373 consumers who

---

[1] Plaintiff and Defendants are referred to collectively herein as the "Parties."

1

received text messages from Defendants, or third-parties acting on their behalf. On May 11, 2020, the Court granted Preliminary Approval of the Class Action Settlement and Settlement Class directed that notice be provided to the Settlement Class and established a deadline for the filing of a motion for Final Approval. *See* Dkt. #47. Pursuant to the Court's Order, the Parties proceeded to provide notice to the class. Plaintiff and Class Counsel now seek Final Approval of the Settlement, and approval of a Service Award for the Class Representative and reimbursement of attorneys' fees for Class Counsel.

## INTRODUCTION & BACKGROUND

On August 5, 2019, Plaintiff filed a Class Action Complaint on behalf of herself and a putative class of similarly situated individuals against Defendant Classic Chevrolet, Inc., alleging violations of the TCPA and seeking, among other things, monetary damages on behalf of Plaintiff and all members of the class (Dkt. #2).

On August 29, 2019, Defendant Classic Chevrolet, Inc. filed its Answer to the Complaint, wherein it denied, wholesale, that it is liable to Plaintiff or any of the putative class members for violations of the TCPA (Dkt. #9). Defendant Class Chevrolet, Inc. also asserted a bevy of affirmative defenses, including but not limited to, prior consent; impermissible fine or penalty in violation of the Fifth and Fourteen Amendments to the U.S. Constitution; lack of standing; failure to mitigate; statute of limitations; *in pari delicto*; lack of legally cognizable injuries or damages; and unconstitutional restriction of free speech in violation of the First Amendment to the U.S. Constitution. *See* Dkt. #9, at pgs. 9-14.

On September 30, 2019, after conducting a telephonic meet and confer, the Parties submitted a Joint Status Report to the Court (Dkt. # 15). On October 1, 2019, the Court issued a Scheduling Order, which established an expedited briefing schedule for class certification issues (Dkt. # 16). The Scheduling Order provided that, among other things, Plaintiff must file her motion for class certification by December 31, 2019, with the class certification hearing scheduled to occur on February 27, 2020. Shortly thereafter, the parties engaged in written discovery, and Class Counsel, on behalf of Plaintiff and the class, served document subpoenas and deposition notices on several non-party entities, including Trumpia, Defendants' text message marketing vendor that transmitted the subject text messages to Plaintiff, and TrueCar Inc., the lead generator that supplied Plaintiff's number to Defendants.

In connection with these discovery efforts, Defendants and third parties produced a

substantial quantity of documents and electronic data, which were reviewed by Class Counsel. For instance, on October 17, 2019, Trumpia produced numerous pages of call logs, covering the years 2017, 2018, and 2019, and corresponding data for approximately 118,373 persons who may be Settlement Class Members, according to Defendants' records and/or the Trumpia call logs.

On November 15, 2019, the Parties voluntarily participated in an early, in-person mediation in Tulsa, Oklahoma. But despite a full day of detailed, good-faith negotiations and the best efforts of mediator Terry Thomas, the Parties could not reach an agreement. On November 22, 2019, Plaintiff served responses to Defendant Classic Chevrolet Inc.'s first set of interrogatories, first request for admissions, and first request for production, and also produced documents responsive thereto.

On December 10, 2019, the Parties jointly moved to amend the scheduling order, advising the Court that subsequent to the Parties attending mediation on November 15, 2019, they have continued to explore the possibility of an early resolution, and as part of that effort, have agreed to stay all depositions and discovery. Dkt. # 17. The Parties therefore asked the Court to extend the class certification deadlines to facilitate these ongoing settlement negotiations and protect Parties from having to incur additional, unnecessary litigation expenses. *Id.* The Motion was granted via Minute Order (Dkt. #18), and on December 16, 2019, the Court issued an Amended Scheduling Order (Dkt. #19), extending the deadline to move for class certification to February 28, 2020 and rescheduling the class certification hearing for May 7, 2020.

On January 28, 2020, the Parties filed a Joint Motion to Extend Class Certification Deadlines, requesting that the Court provide Plaintiff with sixteen additional days, up to and including March 16, 2020, to file her motion for class certification. *See* Dkt. #22. As grounds for the extension, Plaintiff explained that she has been attempting to schedule the depositions of two of Defendants' vendors, TrueCar, Inc. and Trumpia; however, due to the vendors' limited availability and unforeseen scheduling conflicts between the Parties and their counsel, March 2, 2020 and March 5, 2020 were the earliest dates on which the depositions could be scheduled. *Id.* Because both depositions were essential to Plaintiff's motion for class certification, given that Defendants obtained Plaintiff's cell phone number from TrueCar, Inc. and then used Trumpia's messaging platform to send the at-issue text messages, the Parties requested a 16-day extension of the class certification deadline, making the new deadline March 16, 2020. *See* Dkt. #22, at pgs. 2-3. On January 29, 2020, the Court granted the Joint Motion to Extend via Minute Order and

extended the class certification deadline to March 16, 2020 and rescheduled the class certification hearing for May 26, 2020. *See* Dkt. # 23.

In early March 2020, the Parties engaged in another round of extensive, arm's-length negotiations to resolve this action. Informed by further analysis of documents and data obtained from third parties, and with an eye towards securing substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice, the Parties were able to reach an agreement to resolve this case, culminating in the signing of the instant Settlement Agreement. *See* Settlement Agreement and Release ("Settlement Agreement" or "Agreement), attached hereto as **Exhibit A** (previously filed as Dkt. #46-1).[2]

As agreed by the Parties, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. #46). On May 11, 2020, the Court entered its Order Preliminarily Approving Class Action Settlement and Certifying Settlement Class (Dkt. #47).

Having carried out the instructions in the Preliminary Approval Order, Plaintiff, the Class Representative, and Class Counsel now seek final approval of the Settlement. As demonstrated below, the Settlement is fair, adequate, and reasonable, and, therefore, should be finally approved. Indeed, the Settlement here was reached only after extensive arm's-length negotiations and formal mediation among competent counsel, provides certain recovery in the face of unanswered and hotly disputed questions of law and fact, and avoids prolonged and expensive litigation of the complex issues underlying this case. Accordingly, Plaintiff and Class Counsel now respectfully request that the Court enter an Order providing Final Approval for: (1) the Class Action Settlement, (2) the Service Award to the Class Representative, (3) an Award of Attorney's Fees to  Class Counsel, and directing that a Final Judgment be entered dismissing the Action with prejudice.

<u>**MOTION FOR FINAL APPROVAL**</u>

A.      <u>**Summary of the Settlement Terms**</u>

1.      **The Settlement Class**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> **Any person who received marketing text messages from Defendants from March 12, 2016 to April 13, 2020, including but not limited to any text messages from DoCircle, Inc. d/b/a Trumpia, for the period**

---

[2] All capitalized terms used herein have the same meanings as those defined in the Agreement.

**running from September 30, 2017 to September 8, 2019.**

Agreement at ¶34; Order Preliminarily Approving Class Action Settlement and Certifying Settlement Class at ¶6 (Dkt. # 47). Excluded from the Settlement Class are: (1) the trial judge presiding over this case; (2) Defendants, as well as any parent, subsidiary, affiliate or control person of Defendants, and the officers, directors, agents, servants or employees of Defendants; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely opted out of this proceeding; and (6) Plaintiff's Counsel and their employees. Agreement at ¶34.

### 2.    Monetary Relief

Pursuant to the Settlement Agreement, Defendants have established a cash settlement fund for the benefit of Settlement Class Members in the amount of $850,000.00 ("Settlement Fund"). Agreement at ¶35. Each Settlement Class Member who timely files a valid Claim Form shall automatically receive a cash distribution payable by check, with the amount of the cash distribution determined by the following formula: Net Settlement Fund divided by the total number of Settlement Class Members = Settlement Fund Payment. Settlement Agreement at ¶61. Settlement Fund Payments will be sent to Class Claimants at the address they listed on their Claim Form no later than 45 days following the Effective Date. *Id.* at ¶¶ 62, 65.

### 3.    Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendants from claims related to the subject matter of the Action. The detailed release language is found in the Settlement Agreement at ¶¶ 66-71.

### 4.    Settlement Notice

Pursuant to the Court's Order, the Parties provided notice to the class. *See* Declaration of Class Counsel Scott Edelsberg, at ¶2, attached hereto as **Exhibit B.** The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendants had available about Settlement Class members. *See* Order Preliminarily Approving Class Action Settlement and Certifying Settlement Class (Dkt. #47) at ¶13. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Awards for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *Id.* The Notices and Notice Program constituted sufficient notice to all

persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process. *See* Order Preliminarily Approving Class Action Settlement and Certifying Settlement Class (Dkt. #47) at ¶13. Additionally, the notice required under 28 U.S.C. § 1715(b) was provided in compliance with and prior to the deadlines established in the Order Preliminarily Approving Class Action Settlement and Certifying Settlement Class. *See* Declaration of Settlement Administrator Ramsey Engler, at ¶3, attached hereto as **Exhibit C.**

### 5.     Service Award

Pursuant to the Settlement Agreement, Class Counsel is entitled to request a Service Award of up to $5,000.00 for the Class Representative, Plaintiff Jennifer King. Agreement ¶74. If the Court approves the Service Award, it will be paid from the Settlement Fund. *Id.* The Service Award will compensate the Class Representative for her effort in the Action, and for the risks she undertook in prosecuting the Action against Defendants.

### 6.     Award of Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Class Counsel is entitled to request, and Defendants have agreed not to oppose, an award of attorneys' fees of up to 33.33% of the Settlement Fund, or the sum of $283,305.00, which shall be paid directly from the Settlement Fund. Agreement ¶74. Defendants have also agreed not to oppose Class Counsel's request for reimbursement of costs and expenses in the amount of $5,832.10. *Id.* at ¶ 72. The Parties negotiated and reached an agreement on attorney's fees, costs, and the Service Award only after agreeing on all other material terms of the Settlement. *Id.* at ¶ 75; Edelsberg Decl. at ¶ 3.

### B.     <u>The Court Should Grant Final Approval of the Settlement</u>

The Court should enter final approval of the Class Action Settlement because it is fair, reasonable, and adequate.  Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. Fed. R. Civ. P. 23(e). This Court has broad discretion in deciding whether to grant final approval of a class action settlement. *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d, 322, 324 (10th Cir. 1984). "As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 455 (S.D.N.Y. 2004).

In the Preliminary Approval Order, the Court took the first step towards final approval by preliminarily approving the Settlement as fair, reasonable, and adequate. Notice was then sent to

the Settlement Class pursuant to the terms of the Settlement Agreement and in the form and manner approved by the Court. Plaintiff and Class Counsel now request that the Court take the second step—and granting final approval of the Settlement.

Rule 23(e) sets forth the relevant considerations that guide the court's decision to finally approve a class action settlement. Specifically, Rule 23(e)(2), provides:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)   the costs, risks, and delay of trial and appeal;
>>
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As demonstrated below, each of the four factors identified in Rule 23(e) weighs in favor of final approval.

## 1. The Class Representative and Class Counsel Have Adequately Represented the Class

The first factor weighs in favor of preliminary approval because the Class Representative and Class Counsel have adequately represented the Class. In discussing how to assess the quality of the representation provided for purposes of approving settlement, the advisory committee note to the 2018 amendments state "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23 advisory committee notes, 2018.

Here, Class Counsel have engaged in significant discovery efforts and amassed a substantial amount of data, allowing counsel to build a deep base of knowledge that would inform the parties settlement negotiations.

Here, the Parties exchanged written discovery and Class Counsel, on behalf of Plaintiff and the Settlement Class, served document subpoenas and deposition notices on several third-parties, including Trumpia, Defendants' text message marketing vendor that transmitted the subject text messages to Plaintiff, and TrueCar Inc., the lead generator that supplied Plaintiff's number to Defendants. In connection with these discovery efforts, Defendants and third parties produced a substantial quantity of documents and electronic data, which were reviewed by Class Counsel. For instance, on October 17, 2019, Trumpia produced extensive documentation, including call logs and other data responsive to Plaintiff's subpoena.

Class Counsel negotiated the Settlement with the benefit of this targeted discovery, and after having compiled a detailed informational framework bearing on the key issues driving this case, namely, liability, class size, and aggregate damages. Edelsberg Decl. ¶ 5. Specifically, Class Counsel reviewed numerous pages of documents and electronic data regarding potential class members. Plaintiff also spent considerable time researching and navigating Defendants' numerous defenses, as well as developing strategies to defeat, limit, strike, or avoid these defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendants' defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis.  Edelsberg Decl. ¶ 6.

## 2. The Settlement is Product of Extensive Arm's-Length Negotiations Between Experienced Counsel

The fact that the Settlement was fairly and honestly negotiated by qualified, experienced counsel supports final approval. *See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid."). The fairness of the negotiation process is to be examined with reference to the experience of counsel, the vigor with which the case was prosecuted, and any coercion or collusion that may have affected the negotiations.

Here, the Settlement is the product of extensive arm's-length negotiations between the Parties' experienced counsel. *See* Edelsberg Dec. at ¶4. Comprehensive examination of the massive amounts of information and data produced in this litigation enabled the Parties to make informed decisions about the strengths and weaknesses of their respective cases. *See Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 U.S. Dist. LEXIS 138818, at *34 (N.D. Okla. Dec.

8

2, 2011) (finding class counsel "uniquely position to understand the strengths and weaknesses of [the plaintiff's] case, and how to structure a potential settlement" based on review of extensive documents produced in response to written discovery).

Additionally, the use of a formal mediation process supports the conclusion that the Settlement was fairly and honestly negotiated. *See Ashley v. Reg'l Transp. Dist.*, No. 05-CV-01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *17 (D. Colo. Feb. 11, 2008) (finding settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months). The assistance of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008).

Here, the Parties were represented by counsel with vigor to achieve an outstanding Settlement. The Settlement resulted from a formal mediation session with a highly qualified and respected mediator, Terry Thomas. After the face-to-face mediation session on November 15, 2019 the Parties were ultimately able to reach an agreement-in-principle to settle the Litigation.

There has been no opposition to the Settlement, as not a single objection was filed to date. Edelsberg Decl. ¶ 12. This is another indication that the Settlement Class is clearly satisfied with the Settlement. These facts demonstrate the Settlement resulted from serious, informed, and non-collusive negotiations between skilled and dedicated attorneys, and therefore supports entering final approval.

**3.    The Relief Provided for the Class is Adequate**

**(i) The Costs, Risks, and Delay of Trial and Appeal**

The costs, risks, and delay of trial and appeal weighs in favor of approving this substantial Settlement. The existence of serious questions of law and fact place the ultimate outcome of this Litigation in doubt. Such doubt "tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-CV-933-M, 2008 U.S. Dist. LEXIS 86741, at *36 (W.D. Okla. Oct. 27, 2008) (internal citations omitted).

In this litigation, there are numerous factual and legal issues about which the Parties disagree—issues that would ultimately be decided by this Court or a jury. And to this day, Defendants deny that they committed any acts or omissions giving rise to any liability or violation of law. Agreement at ¶81. Indeed, Defendants have always maintained that they entered into this

Settlement solely to eliminate the burden and expense of further litigation. *Id.*

In addition, despite Plaintiff's optimism regarding her chances at trial, she and Class Counsel would have had to overcome a number of significant obstacles. Edelsberg Decl. at ¶7. First, before reaching the merits of this Litigation, the Court and the Parties would be required to resolve a number of complex legal questions, against the backdrop of an uncertain statutory landscape, riddled with conflicting authority and circuit splits. Most notably, on July 9, 2020, the Supreme Court of the United States granted certiorari in *Duguid v. Facebook Inc.*, 923 F.3d 1146 (9th Cir. 2019), pet. granted, No. 19-511, to decide the meaning of an "automatic telephone dialing system" (47 U.S.C. § 227(a)(1)), which is a critical element of Plaintiff's TCPA claim under 47 U.S.C. § 227(b)(1)(A)(iii). This Settlement was reached prior to the grant of certiorari in *Duguid* and thus avoids substantial risk to Plaintiff on that significant merits question.

Moreover, the Settlement renders the resolution of these issues unnecessary and provides a guaranteed recovery in the face of uncertainty. Edelsberg Decl. at ¶23. The complexity, uncertainty, expense, and likely duration of further litigation and appeals supports final approval because the Settlement Class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." Edelsberg Decl. at ¶23; *see also McNeely*, 2008 U.S. Dist. LEXIS 86741, at *37.

Ultimately, the recovery achieved by this Settlement must be measured against the uncertainties highlighted above and the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. *Id.* at ¶10.

When the risks and uncertainties of continuing this litigation are compared to the immediate benefits of the Settlement, it is clear that the Settlement is fair, reasonable, and in the best interests of the Settlement Class. The reasonableness and fairness of the Settlement becomes even more apparent when considering the numerous defenses asserted by Defendants, and the challenging and unpredictable path of litigation that Plaintiff and the class members would have faced absent the Settlement. Edelsberg Decl. ¶ 26.

Apart from these risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Edelsberg Decl. ¶ 8. Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing

10

litigation, the Settlement represents a fair compromise. Edelsberg Decl. ¶ 8. Ultimately, this Settlement provides an extremely fair and reasonable recovery to Settlement Class members when considering Defendants' numerous defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. Edelsberg Decl. ¶ 10.

**(ii)    The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims**

The claims process and method for distributing relief to the class is straightforward, easy to understand for Settlement Class members, and designed so that they can easily claim their portion of the Settlement Fund. Edelsberg Decl. ¶ 2. In this claims-made settlement, Settlement Class members will make a claim by submitting a valid Claim Form to the Claims Administrator, which will then be evaluated for timeliness and completeness. Settlement Agreement. at ¶41-54. Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; (3) cellular telephone number(s) at which she or he received one or more Messages from Defendants; and (4) a current contact telephone number. *Id.* at ¶64. A Settlement Class Member must also represent under oath that he or she received Defendants' Message. *Id.* at ¶64. Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to automatically receive a cash payment. Settlement Agreement at ¶¶64-65. In the event a Claim Form is deficient, in that information is missing, inaccurate, or does not match up to a telephone number that received Messages from Defendant, the Claims Administrator will attempt to contact the Settlement Class member and the Settlement Class member will have another opportunity to submit a valid Claim Form. *Id.* Untimely Claim Forms will be rejected, and those Settlement Class Members will not receive a Settlement Fund Payment. *Id.* at ¶¶63-65. If those same Settlement Class Members also fail to timely opt-out, they will remain in the Settlement Class and their claims will be released. *Id.* at ¶¶64-65. Claim Forms can be submitted until 15 days following the Final Approval Order. *Id.* at Section I, Par. 7, ¶67

With respect to allocation of the Settlement Fund Payments, each Settlement Class Member who timely files a valid Claim Form shall automatically receive a cash distribution payable by check. Settlement Agreement at ¶61. The amount of each cash distribution shall be determined by

11

the following formula: Net Settlement Fund divided by the total number of Settlement Class Members = Settlement Fund Payment. *Id*. Settlement Fund Payments will be sent to Class Claimants at the address they listed on their Claim Form no later than 45 days following the Effective Date. *Id* at ¶62.

>    **4.    The Parties Agree that the Settlement is Fair and Reasonable**

Class Counsel strongly endorses the Settlement. Edelsberg Decl. at ¶ 11. Defendants' and Class Counsel's judgment as to the fairness of the Settlement also supports final approval. "Counsels' judgment as to the fairness of the [settlement] agreement is entitled to considerable weight." *Childs*, 2011 U.S. Dist. LEXIS 138818, at *37 (internal citation omitted).

The Court should not "substitute its own judgment for that of counsel," *Lengel v. HomeAdvisor, Inc.*, 2017 U.S. Dist. LEXIS 10471, at *20-21 (D. Kan. Jan. 25, 2017), and therefore Court should give great weight to the recommendations of counsel for the Parties, given their considerable experience in this type of litigation.

>    **5.    The Notice Method Used was the Best Practicable Under the Circumstances, Satisfies the Requirements of Rule 23 and Due Process, and Should Therefore be Approved**

The Court should approve the Notice given to the Settlement Class. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In terms of due process, a settlement notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Fager v. CenturyLink Communs., LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016)(internal citations omitted). Neither Rule 23 nor due process "require actual notice to each party intended to be bound by the adjudication of a representative action." *In re Integra Realty Res., Inc*., 262 F.3d 1089, 1110 (10th Cir. 2001) (citing *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 313 (1950)).

In its Preliminary Approval Order, the Court preliminarily approved the form and manner of the Notice Documents disseminated by the Settlement Administrator, stating "that the Class Notice program described in the Settlement is the best practicable under the circumstances. The

Class Notice program is reasonably calculated under the circumstances to inform the Settlement Class of the pendency of the Action, certification of a Settlement Class, the terms of the Settlement, Class Counsel's Fee Application and the request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Class notices and Class Notice program constitute sufficient notice to all persons entitled to notice. The Class notices and Class Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of Due Process." *See* Dkt. #47 at 7-8; *see also* Agreement ¶¶ 41-54.

The Notice Program consisted of: (1) Mailed Notice (postcard /claims form), (2) a Toll-free Phone Number, (3) Email Notice, (4) Online Notice (website), and (5) Long Form Notice. Settlement Agreement ¶43; *See* Exhibit C, Declaration of Settlement Administrator Ramsey Engler, at ¶¶6-12. It also included the creation of a toll-free number where Class Members could obtain information about the Settlement and/or request a Notice Packet, which is accessible 24 hours a day, 7 days a week. Exhibit C, at ¶¶ 12-13. The Notice Administrator also established the Settlement Website, www.CCTCPAsettlement.com, wherein the Notice, Claim Form, and other case-related documents were made available on the website to enable Settlement Class members to obtain detailed information about the Action and the Settlement. *Id.* at ¶ 10-11.

Each facet of the Notice Program was timely and properly accomplished. Exhibit C, at ¶¶ 7-13. The Notice Administrator received data from Defendants that identified 118,373 unique, affected phone numbers and Epiq matched the list of unique affected phone numbers to the file containing contact information. *Id.* at ¶4. After performing "reverse look-ups" to identify whether an available email or physical address existed for each cell phone number, the Notice Administrator sent a copy of the Notice to all the Class Members with valid email addresses. *Id.* at ¶¶ 4-5, 7. The Notice Administrator then sent mailed notice to all Class Members who were not able to be noticed by email or whose email notices bounced back as undeliverable. *Id.* at ¶8.

In sum, the form, manner and content of the Notice were the best practicable notice, and their contents were reasonably calculated to, and did, apprise Class Members of the pendency and nature of the Settlement and afford them an opportunity to opt out or object. Edelsberg Decl. at ¶2. Therefore, the Court should grant final approval of the Notice given to the Settlement Class. As of August 31, 2020, the Settlement Administrator has received no objections to the settlement or requests to opt out of the settlement. Edelsberg Decl. at ¶12. The deadline to opt-out or submit

objections is September 14, 2020. Settlement Agreement at ¶64; *see also* Order Granting Preliminary Approval (Dkt. # 47) at pg. 12.

**6.      The Court Should Certify the Settlement Class**

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 118,373 individuals, and joinder of all such persons is impracticable. *See* Dkt. # 47 at ¶7(a)("The proposed Settlement Class is thus so numerous that joinder of all members is impracticable.").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers. Dkt. # 47 at ¶7(b)("Here, the commonality requirement is satisfied. Multiple questions of law and fact centering on Defendant's class-wide practices are common to the Plaintiff and the Settlement Class, are alleged to have injured all members of the Settlement Class in the same way, and would generate common answers central to the viability of the claims were this case to proceed to trial.").

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the typicality requirement of Rule 23(a)(3) is satisfied. Plaintiff is typical of absent Settlement Class members because she received a violative communication and suffered the same injuries as them, and because they will all benefit from the relief achieved. *See* Dkt. # 47 at ¶7(c)(" The Plaintiff's claims are typical of the Settlement Class because they concern the same alleged Defendant's practices, arise from the same legal theories, and allege the same types of harm and entitlement to relief. Rule 23(a)(3) is therefore satisfied.").

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Here, Rule 23(a)(4) is satisfied because "there are no conflicts of interest between the Plaintiff and the Settlement Class, and Plaintiff has retained competent counsel to represent her and the Settlement Class. Class Counsel regularly engage in consumer class litigation, complex litigation, and other litigation similar to this Action, and have dedicated substantial resources to the prosecution of the Action. Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the Settlement Class in the Action." *See* Dkt. # 47 at ¶7(d).

Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Dkt. # 47 at ¶7(d).

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  Here, "Rule 23(b)(3) is satisfied because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for the members of the Settlement Class in a single, coordinated proceeding is

superior to hundreds of individual lawsuits addressing the same legal and factual issues." Dkt. # 47 at ¶7(e). Here, "common questions present a significant aspect of the case and can be resolved for all members of the Settlement Class in a single adjudication. In a liability determination, those common issues would predominate over any issues that are unique to individual members of the Settlement Class. Moreover, each member of the Settlement Class has claims that arise from the same or similar alleged practices as well as the same legal theories." *Id.* The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

Based on the foregoing, the Settlement is fair, adequate, and reasonable, and final approval should be granted.[3]

## APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement Agreement, Class Counsel is entitled to request, and Defendants have agreed not to oppose, a Service Award for the Class Representative, Plaintiff Jennifer King, in the amount of $5,000.00. Settlement Agreement at ¶74.

Federal courts regularly grant incentive awards to compensate named plaintiffs for the work they performed. *See, e.g., UFCW Local 880-Retail Food v. Newmont Mining Corp.*, 352 Fed. Appx. 232 (10th Cir. 2009)("Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives...Moreover, a class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class."); *Fankhouser v. XTO Energy, Inc.*, No. CIV-07-798-L, 2012 U.S. Dist. LEXIS 147197, at *9-10 (W.D. Okla. Oct. 12, 2012) (incentive awards totaling $100,000 from $37 million fund).

---

[3] In addition to finding that the proposed settlement meets the requirements of Fed. R. Civ. P. 23, the Court should also find that the proposed settlement meets the requirements of *Rutter v. Wilbanks Corp. v. Shell Oil, Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002), which largely overlap with the requirements set forth in the 2018 amendments to Rule 23. The *Rutter* factors include (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

The work for which service awards are given typically include "monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." Newberg § 17:3. The award should be proportional to the contribution of the plaintiff. Newberg § 17:18. These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award for Plaintiff. Notably, Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action, including, but not limited to, submitting to interviews with Class Counsel, reviewing all material court filings and approving the Agreement. Edelsberg Decl. ¶ 13.

Given Plaintiff's good-faith efforts to advance this case and ultimately facilitate Class Counsel's ability to secure a fair resolution, a $5,000 Service Award is appropriate under these circumstances, particularly "given the structure of the proposed settlement, as the incentive award 'will not diminish any of the other benefits provided to any Class Member." *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741, at *49 (W.D. Okla. Oct. 27, 2008)(internal citations omitted).

## APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with Tenth Circuit precedent, Class Counsel respectfully request an award of attorneys' fees equal to 33.33% of the $850,000 cash fund, which shall be paid directly from the Settlement Fund. Edelsberg Decl. ¶ 14; *see also* Settlement Agreement at ¶72.

Federal Rule of Civil Procedure 23(h) states "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." An award of attorneys' fees is a matter uniquely within the discretion of the trial judge, who has firsthand knowledge of the efforts of counsel and the services provided. *Brown v. Phillips Petroleum Co.,* 838 F.2d 453 (10th Cir. 1988). Such an award will only be reversed for abuse of discretion. *Gottlieb v. Barry*, 43 F.3d 474, 486 (10th Cir. 1994).

Here, Class Counsel's request for attorney's fees is reasonable and fair under Tenth Circuit precedent, and the Parties have expressly agreed that this body of law would govern any determination concerning an award of fees to Class Counsel. Settlement Agreement at ¶ 71. Specifically, the Settlement Agreement provides that "the determination of Class Counsel's request for attorneys' fees **shall be based on controlling Tenth Circuit precedent** involving the award of fees in common fund class actions and not based on state law.*" Id.* (emphasis added).

17

In the Tenth Circuit, the percentage of the fund method is preferred. *Gottlieb*, 43 F.3d at 483. Further, in the Tenth Circuit, in a percentage of the fund recovery case such as this, where federal common law is used to determine the reasonableness of the attorneys' fee under Rule 23(h), neither a lodestar nor a lodestar cross check is required." *Chieftain Royalty Co. v. Marathon Oil Co.*, 2019 U.S. Dist. LEXIS 226386, at *8 (E.D. Okla. Mar. 8, 2019)

Federal courts sitting in Oklahoma have "acknowledged the Tenth Circuit's preference for the percentage method and rejected application of a lodestar analysis or lodestar cross check." *CompSource Oklahoma v. BNY Mellon, N.A.*, 2012 U.S. Dist. LEXIS 185061, at *23 (E.D. Okla. Oct. 25, 2012) ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions."); *Northumberland County Ret. Sys. v. GMX Res. Inc.*, No. CIV-11-520 (W.D. Okla. July 31, 2014) ("The Court is not required to conduct a lodestar assessment of the hours versus a reasonable hourly rate.").

The percentage methodology calculates the fee as a reasonable percentage of the value obtained for the benefit of the class. *See Brown*, 838 F.2d at 454. When determining attorneys' fees under this method, the Tenth Circuit evaluates the reasonableness of the requested fee by analyzing the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.* at 454-55. Not all of the factors apply in every case, and some deserve more weight than others depending on the facts at issue. *Id.* at 456.

The twelve *Johnson* factors are: (l) the time and labor required, (2) the novelty and difficulty of the questions presented by the litigation, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount in controversy and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Gottlieb v. Barry*, 43 F.3d at 482 n.4. Each factor, to the extent applicable, is discussed below.

Here, the eighth *Johnson* factor—the amount involved in the case and the results obtained—weighs heavily in favor of the requested fee award. *See Brown*, 838 F.2d at 456 (holding this factor may be given greater weight when "the recovery [is] highly contingent

18

and that the efforts of counsel were instrumental in realizing recovery on behalf of the class."); Fed. R. Civ. P. 23(h) adv. comm. note (explaining for a "percentage" or contingency-based approach to class action fee awards, "results achieved is the basic starting point"). Under the results obtained factor, the Fee Request is fair and reasonable, given the challenges that would have to be overcome to prevail on the merits and secure expedient relief. Edelsberg Decl. at ¶7. Awarding fees of no more than 33.33% of the total cash settlement fund is reasonable, when viewed against the decisions of other courts, finding this percentage is well within the bounds of reason and fairness. *See e.g., Wornicki v. Brokerpriceopinion.com, Inc.*, Civil Action No. 13-cv-03258-PAB-KMT, 2018 U.S. Dist. LEXIS 213990, at *20 (D. Colo. Sep. 20, 2018)("Courts in this District have recognized that [t]he customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class.")(internal citations omitted); *Shaw v. Interthinx, Inc.*, 2015 U.S. Dist. LEXIS 52783, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within the 20-50% range are "presumptively reasonable").

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member is entitled to claim a cash benefit. Edelsberg Decl. ¶ 23. Thus, this settlement compares favorably to other TCPA class action settlements. *See e.g.*, *Goldschmidt v. Rack Room Shoes, Inc.*, No. 1:18-cv-21220-KMW, 2020 U.S. Dist. LEXIS 7781, at *16 (S.D. Fla. Jan. 16, 2020) (court finally approving TCPA settlement that provided settlement class with the option of selecting $5 in cash or a $10 voucher); *Knutson v. Schwan's Home Serv.*, No. 3:12-cv-00964-GPC-DHB, 2014 U.S. Dist. LEXIS 99637, at *12 (S.D. Cal. July 14, 2014) (noting final TCPA settlement approval in *Wojcik v. Buffalo Bills, Inc.*, 3:12-cv-2414-SDM, ECF No. 73 (M.D. Fla. April 17, 2014), with tiered claim amounts ranging from merchandise debit cards in the amount of $57.50 to $75.00.)

The first *Johnson* factor – the time and labor required—weighs heavily in favor of the fee request. Class Counsel engaged in substantial discovery practice, lengthy and complex negotiation, and mediation in order to obtain this outstanding Settlement. The process necessary to achieve this Settlement required several months of negotiations, including a formal mediation session, telephone conferences, and investigation and research on substantive factual and legal issues. Edelsberg Decl. at ¶17-18.

At bottom, prosecuting and ultimately settling these claims demanded considerable time and labor from Class Counsel on a contingency fee basis, making this fee request reasonable.

Edelsberg Decl. ¶ 15-18. Class Counsel devoted substantial time to investigating the claims against Defendants. *Id.* at ¶ 16. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* at ¶ 17. Time and resources were also dedicated to conducting formal discovery. *Id.* at ¶ 18. Finally, Class Counsel devoted substantial time to reviewing numerous pages of documents and electronic data produced by Defendants. *Id.* at ¶18.

Settlement negotiations consumed further time and resources. Edelsberg Decl. ¶ 19. The initial mediation session, which was unsuccessful, required substantial preparation and document review. Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. *Id.* All of this work consumed a substantial amount of time. *Id.* In the end, Class Counsel's coordinated work paid dividends for the Settlement Class. Edelsberg Decl. ¶ 20. Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id.* The time and resources devoted to this Action readily justify the requested fee.

The second *Johnson* factor -- the novelty and difficulty of the questions presented in this action – also weighs in favor of the Fee Request. Class actions are known to be complex and vigorously contested. The Declarations prove that this certainly was the case here. The legal and factual issues litigated in this case involved complex and highly technical issues. Edelsberg Decl. ¶ 20. This weighs in favor of finding the requested fees to be reasonable, particularly given that this Litigation involved "difficult and highly contested issues" of federal law, subject to several circuit splits and pending decisions from the U.S. Supreme Court. *Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334-SPS, 2019 U.S. Dist. LEXIS 226386, at *15 (E.D. Okla. Mar. 8, 2019).

Courts acknowledge that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). One court in 2015 assumed an "average TCPA case carries a 43% chance of success," *Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015). Here, the quality of Class Counsel's legal work conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Edelsberg Decl. at ¶21. The work of Plaintiff's counsel required the acquisition and analysis of a significant amount of factual and legal information. *Id.* at ¶¶ 18-21.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Edelsberg Decl. ¶ 22. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification and navigating case dispositive merits issues. Edelsberg Decl. ¶ 21. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. Edelsberg Decl. ¶ 21.

The third and ninth *Johnson* factors—the skill required to perform the legal services and the experience, reputation, and ability of the attorneys— also support the Fee Request. This litigation "called for Class Counsel's considerable skill and experience in … complex class action litigation to bring it to such a successful conclusion, requiring investigation and mastery of complex facts, the ability to develop creative legal theories, and the skill to respond to a host of legal defenses." *Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334-SPS, 2019 U.S. Dist. LEXIS 226386, at *16-17 (E.D. Okla. Mar. 8, 2019)

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. Throughout the litigation, Defendants were represented by extremely capable and experienced counsel. They were worthy, highly competent adversaries. Edelsberg Decl. ¶ 22. Defendants were represented by skilled class action defense attorneys who spared no effort in the defense of their clients. *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976). The quality of representation by counsel on *both* sides of this Litigation was high. These factors strongly support the fee award because without the experience, skill and determination displayed by *all* counsel involved, the Settlement would not have been reached. *Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334-SPS, 2019 U.S. Dist. LEXIS 226386, at *19 (E.D. Okla. Mar. 8, 2019).

The fifth *Johnson* factor—the customary fee and awards in similar cases—further weighs in favor of the Fee Request. Class Counsel and Plaintiff negotiated and agreed to prosecute this case on a contingency fee basis. *See* Edelsberg Dec. at ¶27. The customary fee for class counsel in common fund settlement "is approximately one-third of the economic benefit bestowed on the class." Here, Class Counsel seeks attorney's fees not exceeding 33.33% of the Settlement Fund, which is reasonable, when viewed against the decisions of other courts, finding this percentage is well within the bounds of reason and fairness. *See e.g., Wornicki v. Brokerpriceopinion.com, Inc.*, , 2018 U.S. Dist. LEXIS 213990, at *20 (D. Colo. Sep. 20, 2018)("Courts in this District have

21

recognized that [t]he customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class.")(internal citations omitted); *Shaw v. Interthinx, Inc.*, 2015 U.S. Dist. LEXIS 52783, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within the 20-50% range are "presumptively reasonable").

Regarding the tenth *Johnson* factor – the undesirability of the case – and the sixth *Johnson* factor – whether the fee is fixed or contingent -- this Settlement is particularly noteworthy given the combined litigation risks.  Edelsberg Decl. ¶ 24. Although Defendants raised substantial and potentially meritorious defenses,  Class Counsel was required to advance all litigation costs and expenses and assume a significant risk of nonpayment or underpayment given that the representation was undertaken on contingency fee basis. Edelsberg Decl. ¶ 27.

Prosecuting the Action was risky from the outset. Edelsberg Decl. ¶ 25. Defendants were confident in their opposition to Plaintiff's claims. The Settlement Fund obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. *Id.* at ¶ 26. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class's successful prosecution of these claims.

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Edelsberg Decl. ¶ 27. Class Counsel accepted the representation of Plaintiff on a contingency basis, and "Courts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award." *See Wornicki v. Brokerpriceopinion.com, Inc.*, Civil Action No. 13-cv-03258-PAB-KMT, 2018 U.S. Dist. LEXIS 213990, at *20-21 (D. Colo. Sep. 20, 2018).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee.  Edelsberg Decl. ¶ 28.  The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remain completely uncompensated for the time invested in the Action, in addition to the expenses we advanced, which total approximately 5,823.10 Edelsberg Decl. ¶ 29-30.  There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

Finally, Class Counsel's fee request also falls within the range of awards commonly approved in federal TCPA cases. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund). Consequently, Class Counsel's request for attorney's fees in the amount of $283,305.00, or an amount not to exceed 33.33% of the Settlement Fund, is appropriate and should be approved by the Court.

## CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court grant Final Approval of the Class Action Settlement and enter the proposed order attached as **Exhibit D,** under which the Court shall (1) certify in final form the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (2) appoint Plaintiff as the Class Representatives; appoint as Scott A. Edelsberg of Edelsberg Law, P.A., Andrew J. Shamis of Shamis & Gentile, P.A., Manuel S. Hiraldo of Hiraldo P.A., Ignacio J. Hiraldo of IJH Law, and Michael L. Eisenband of Eisenband Law P.A. as Class Counsel, (3) approve the Service Award to Plaintiff in the amount of $5,000.00 (4) award attorneys' fees to Class Counsel in an amount up to 33.33% of the common fund; and (5) enter Final Judgment dismissing the Action with prejudice. Counsel for Defendants have no opposition to this motion.

Dated: August 31, 2020

Respectfully submitted by:

*/s/ Scott Edelsberg*
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
**EDELSBERG LAW, PA**
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, Florida 33132
Telephone: 305-479-2299

**WALLER JORGENSON, PLLC**
Mark A. Waller, OBA 14831
J. David Jorgenson, OBA 4839
401 S. Boston, Suite 500
Tulsa, OK 74103
Email: mwaller@wjwattorneys.com
Telephone: 918-629-3350

**EISENBAND LAW, P.A.**
Michael Eisenband
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Florida Bar No. 94235
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
Email: mhiraldo@hiraldolaw.com
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954.400.4713

**IJH LAW**
Ignacio J. Hiraldo
Florida Bar No. 0056031
14 NE First Ave. 10th Floor
Miami, FL 33132
Email: ijhiraldo@ijhlaw.com
Telephone: 786.351.8709

*Counsel for Plaintiff Jennifer King and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 31, 2020, I electronically transmitted Plaintiff's and

Class Counsel's Unopposed Motion for Final Approval of Class Action Settlement to the Clerk of

Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all

parties and counsel of record.

*/s/ Scott Edelsberg*____
*Counsel for Plaintiff and the Class*