# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

### Case Number 4:19-cv-00429-CVE-JFJ

JENNIFER KING, individually and on
behalf of all others similarly situated,

      Plaintiff,

vs.

 CLASSIC CHEVROLET, INC.,
BARTLESVILLE CDJ, LLC;
BIXBY AUTO PLAZA, LLC;
MIAMI AUTO SUPERCENTER, INC.;
NISSAN OF MUSKOGEE LLC;
REGIONAL HYUNDAI LLC;
SUBURBAN CHEVROLET, INC.;
TULSA RACEWAY PARK, LLC; and
WKW ACQUISITIONS LLC D/B/A
HONDA OF MUSKOGEE,

      Defendants.

_____/

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between and among the following parties, by and through their respective counsel: Plaintiff Jennifer King, on behalf of herself and the Settlement Class, and Defendant Classic Chevrolet, Inc.; Defendant Bartlesville CDJ, LLC; Defendant Bixby Auto Plaza, LLC; Defendant Miami Auto Supercenter, Inc.; Defendant Nissan of Muskogee LLC; Defendant Regional Hyundai LLC; Defendant Suburban Chevrolet, Inc.; Defendant Tulsa Raceway Park, LLC; and Defendant WKW Acquisitions LLC d/b/a Honda of Muskogee (collectively, the "Defendants").

WHEREAS, on August 15, 2019, Plaintiff filed a Class Action Complaint on behalf of herself and a putative class in the lawsuit styled *Jennifer King v. Classic Chevrolet, Inc.*, Case No. 4:19-cv-00429-CVE-JFJ (N.D. Okl.) and, on March 12, 2020, Plaintiff filed an Amended Class Action Complaint (the "Complaint"), which joined Defendant Bartlesville CDJ, LLC; Defendant Bixby Auto Plaza, LLC; Defendant Miami Auto Supercenter, Inc.; Defendant Nissan of Muskogee LLC; Defendant Regional Hyundai LLC; Defendant Suburban Chevrolet, Inc.; Defendant Tulsa Raceway Park, LLC; and Defendant WKW Acquisitions LLC d/b/a Honda of Muskogee as additional party defendants under the amended case style *Jennifer King v. Classic Chevrolet, Inc.; Bartlesville CDJ LLC; Bixby Auto Plaza, LLC; Miami Auto Supercenter, Inc.; Nissan of Muskogee LLC; Regional Hyundai LLC; Suburban Chevrolet, Inc.; Tulsa Raceway Park, LLC; and WKW Acquisitions LLC d/b/a Honda of Muskogee* ("Litigation"), and asserted claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA");

WHEREAS, Plaintiff alleges that she and members of the class received unsolicited marketing text messages from Defendants without prior express consent or express written consent, which allegedly harmed her and the class (the "Allegations");

WHEREAS, Plaintiff alleges that she and other similarly situated individuals are entitled to declaratory and injunctive relief, statutory damages, attorneys' fees and costs as a result;

WHEREAS, on November 15, 2019, the Parties attempted to settle the Litigation through mediation with the assistance of mediator Terry M. Thomas, during which the parties engaged in intensive negotiations to resolve the Litigation;

WHEREAS, on March 6, 2020, the Parties as a result of extensive arm's-length negotiations, including but not limited to multiple telephone conferences and e-mails between the Parties' counsel, were able to resolve the Litigation with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice;

WHEREAS, for settlement purposes only, Plaintiff asks that this Court certify the Settlement Class and appoint her as Class Representative and her attorneys Edelsberg Law, P.A., Shamis & Gentile, P.A., and Hiraldo, P.A. as Class Counsel in this case;

WHEREAS, based on their investigation and discovery in the Litigation and the experience of Class Counsel, Plaintiff and Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Class and in the best interest of the Settlement Class;

WHEREAS, Plaintiff, on behalf of herself and as the representative of the Settlement Class, and Defendants desire to resolve the dispute between them;

WHEREAS, Plaintiff, on behalf of herself and as the representative of the Settlement Class, and Defendants will execute this Agreement solely to compromise and settle protracted, complicated, and expensive litigation; and

WHEREAS, Defendants deny any and all liability or wrongdoing to the Class Representative and to the Settlement Class. Nonetheless, Defendants have concluded that further litigation would be protracted and expensive, have taken into account the uncertainty and risks inherent in this Litigation, and have determined that it is desirable that the Litigation and the Allegations be fully, completely, and finally settled in the manner and upon the terms set forth herein.

**NOW, THEREFORE,** in exchange for mutual covenants and promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the Parties and their counsel agree that the Litigation shall be settled, compromised, and/or dismissed on the merits and with prejudice on the terms and conditions in this Agreement (including but not limited to a full, fair and complete release of all the Released Parties from the Released Claims), and without costs (except as provided herein) subject to approval by the Court of this Agreement after a hearing and on finding that it is a fair, reasonable, and adequate settlement, as follows.

I.    **Definitions**

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement:

1.    "Action" or "Litigation" mean the lawsuit styled *Jennifer King v. Classic Chevrolet, Inc.; Bartlesville CDJ LLC; Bixby Auto Plaza, LLC; Miami Auto Supercenter, Inc.; Nissan of Muskogee, LLC; Regional Hyundai LLC; Suburban Chevrolet, Inc.; Tulsa Raceway Park, LLC; and WKW Acquisitions LLC d/b/a Honda of Muskogee*, and bearing Case Number 4:19-cv-00429-CVE-JFJ.

2.    "Administrator" means Epiq Class Action & Claims Solutions, Inc. ("Epiq"), which,

subject to Court approval, shall be responsible for administrative tasks, which may include without limitation: (a) arranging for distribution of the Class Notice and Claim Form to Settlement Class Members; (b) making any mailings to Settlement Class Members required under the Agreement, (c) forwarding written inquiries from Settlement Class Members to Class Counsel or their designee, (d) establishing the Settlement Website, (e) receiving and processing Settlement Claim Forms and distributing payments to Settlement Class Members, and (f) otherwise assisting with implementing and administering this Agreement, subject in all cases to approval by Class Counsel and Counsel for the Defendants. Class Counsel and Defendants may, by agreement, substitute a different organization as Settlement Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally. In the absence of agreement, either Class Counsel or Defendants may move the Court to substitute a different organization as the Administrator upon a showing that the responsibilities of the Administrator have not been adequately executed by the incumbent.

3.    "Defendants" means Classic Chevrolet, Inc.; Bartlesville CDJ LLC; Bixby Auto Plaza, LLC; Miami Auto Supercenter, Inc.; Nissan of Muskogee, LLC; Regional Hyundai LLC; Suburban Chevrolet, Inc.; Tulsa Raceway Park, LLC; and WKW Acquisitions LLC d/b/a Honda of Muskogee, collectively or individually.

4.    "Messages" refers to the text messages that were sent to Plaintiff and Settlement Class Members by or on behalf of Defendants from March 12, 2016 through to April 13, 2020, including messages from DoCircle, Inc. d/b/a Trumpia, from September 30, 2017 through the September 8, 2019.

5.    "Claim" or "Claim Form" means a written submission made to the Administrator by a

Settlement Class Member for the purpose of participating as a Settlement Class Claimant in this Action.

6.      "Class Counsel" means:

Scott Edelsberg, Esq.
Edelsberg Law, P.A.
20900 NE 30th Ave., Suite 417
Aventura, FL 33180

Andrew J. Shamis, Esq.
Shamis & Gentile, P.A.
14 NE 1st Avenue, Suite 1205
Miami, Florida 33132

Manuel S. Hiraldo, Esq.
Hiraldo P.A.
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301

7.      "Claims Deadline" means the last day that Settlement Class Members may submit a Claim Form to the Administrator. The Claims Deadline shall be 15 days after the Final Approval Hearing. All Claims postmarked or filed through the Settlement Website on or before the Claim Deadline shall be timely, and all Claims postmarked or filed through the Settlement Website after the Claim Deadline shall be untimely and barred from entitlement to any Claim Settlement Payment.

8.      "Class Period" means the period from March 12, 2016 to April 13, 2020.

9.      "Class Representative" means Jennifer King.

10.     "Court" means the United States District Court for the Northern District of Oklahoma.

11.     "Effective Date" means the fifth business day after which all of the following events have occurred:

a.      The Court has entered the Final Approval Order; and

b.      The time for seeking rehearing or appellate or other review has expired, and no

appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired and relief from a failure to file same is not available. If nobody objects, and therefore nobody has standing to file an appeal, the Effective Date means the fifth business day after which the Court has entered the Final Approval Order.

12. "Escrow Account" means the account to be established at an institution to be chosen by Class Counsel consistent with the terms and conditions of this Agreement.

13. "Escrow Agent" means Epiq Class Action & Claims Solutions, Inc. Class Counsel and Defendants may, by agreement, substitute a different organization as Escrow Agent, subject to approval by the Court if the Court has previously approved the Settlement, preliminarily or finally. In the absence of agreement, either Class Counsel or Defendants may move the Court to substitute a different organization as Escrow Agent upon a showing that the responsibilities of Escrow Agent have not been adequately executed by the incumbent. The Escrow Agent shall administer the Escrow Account.

14. "Final Approval" means the date that the Court enters an order and judgment granting final approval to the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of a Service Award to the Class Representative. The proposed Final Approval Order, defined below, shall be in a form agreed upon by Class Counsel and Defendants. In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

15. "Final Approval Order" means the order and final judgment that the Court enters upon

Final Approval. In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

16. "Net Settlement Fund" means the Settlement Fund minus Settlement Costs.

17. "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement. "Notice Program" means the methods provided for in this Agreement for giving the Notice and consists of (1) Mailed Notice to the extent possible through reverse lookup of phone numbers for Class Members for whom an email address is not provided or cannot reasonably be determined (as set forth below) or for whom Email Notice bounced back as undeliverable; (2) Toll-free Telephone Number; (3) Emailed Notice and (4) Settlement Website, which will include Long-Form Notice. Forms of the proposed Email Notice, Mailed Notice, Long-Form Notice, and Claim Form agreed upon by Class Counsel and Defendants, subject to Court approval and/or modification, are attached hereto as Exhibit 1, Exhibit 2, Exhibit 3, and Exhibit 4, respectively.

18. "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first emailed, mailed, or appears online, and that ends no later than 30 days prior to the Final Approval Hearing. The deadline for the Opt-Out Period will be specified in the Notice.

19. "Parties" means Plaintiff and Defendants.

20. "Plaintiff" means Jennifer King.

21. "Preliminary Approval" means the date on which the Court enters an order preliminarily approving the Settlement in the form jointly agreed upon by the Parties.

22. "Released Claims" means all claims to be released as specified in this Agreement. The

"Releases" mean all of the releases contained in this Agreement.

23.    "Released Parties" means Classic Chevrolet, Inc; Bartlesville CDJ, LLC; Bixby Auto Plaza, LLC; Miami Auto Supercenter, Inc.; Nissan of Muskogee LLC; Regional Hyundai LLC; Suburban Chevrolet, Inc.; Tulsa Raceway Park, LLC; and WKW Acquisitions LLC d/b/a Honda of Muskogee, their parent companies, subsidiaries, affiliates, owners, managers, directors, officers, shareholders, employees, affiliates, vendors, other third-party service providers and all persons or entities involved in the generation, preparation, and distribution of the Messages, or on whose behalf they were sent. "Released Parties" also shall include any other persons or entities, not identified above, who, by the express terms of this Agreement, are intended to be released by the Releasing Parties.

24.     "Releasing Parties" means Plaintiff and all Settlement Class members who do not timely and properly opt-out of the Settlement, and each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, and all those who claim through them or on their behalf.

25.    "Settlement" means the settlement into which the Parties have entered to resolve the Action.

26.     "Settlement Class" is defined in paragraph 34 hereof.

27.    "Settlement Class Member" means any person included in the Settlement Class who does not opt-out of the Settlement.

28.    "Settlement Class Claimant" means any person included in the Settlement Class who files a valid and timely Claim and who does not opt-out of the Settlement.

29.     "Settlement Class Data" means data relating to approximately 118,373 persons who, according to Defendants' records and/or the Trumpia call logs for the years 2017, 2018, and 2019 as produced by Trumpia in this action, may be Settlement Class Members. The Settlement Class Data shall be treated as Confidential Information.

30.     "Settlement Costs" mean all costs incurred by Plaintiff, the Settlement Class, and Class Counsel in connection with the Action, including but not limited to, notice and settlement administration costs, including the costs associated with providing notice required by the Class Action Fairness Act codified at 28 U.S.C. Sec. 1332(d), expenses advanced by Class Counsel, attorneys' fees awarded to Class Counsel, and any Service Award payable to the Class Representative.

31.     "Settlement Fund" means the $850,000.00 cash fund to be established pursuant to this Agreement.

32.     "Settlement Fund Payment" means the cash dollar amount of the Settlement Fund that each Settlement Class Claimant will receive.

33.     "Settlement Website" means the website that the Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for members of the Settlement Class to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Long-Form Notice, the order preliminarily approving this Settlement, and such other documents as Class Counsel and Defendants agree to post or that the Court orders posted on the website.  These documents shall remain on the Settlement Website at least until Final Approval. The URL of the Settlement Website shall be www.CCTCPAsettlement.com or such other URL as Class Counsel and Defendants agree

upon in writing. Ownership of the Settlement Website URL shall be transferred to Defendants within 10 days of the date on which operation of the Settlement Website ceases.

## II.  **Certification of the Settlement Class**

34.  For settlement purposes only, Plaintiff and Defendants agree to ask the Court to certify the following "Settlement Class," consisting of approximately 118,373 Settlement Class members, under Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure:

> Any person who received marketing text messages from Defendants from March 12, 2016 to April 13, 2020, including but not limited to any text messages from DoCircle, Inc. d/b/a Trumpia, for the period running from September 30, 2017 to September 8, 2019.

The following are excluded from the Settlement Class:  (1) the trial judge presiding over this case; (2) Defendants, as well as any parent, subsidiary, affiliate or control person of Defendants, and the officers, directors, agents, servants or employees of Defendants; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely opted out of this proceeding; and (6) Plaintiff's Counsel and their employees.  Defendants conditionally agree and consent to certification of the Settlement Class.  Defendants' conditional agreement is contingent on (i) the Parties' execution of this Agreement, (ii) the Court's entry of the Final Approval Order, and (iii) the Final Approval Order becoming final.  Except as provided below, if the Agreement, for any reason, does not receive Final Approval, if the Final Approval Order does not become final, or if the Agreement is not otherwise terminated, it shall be null and void, it shall be of no force or effect whatsoever, and the negotiation, terms, and entry of the Agreement shall remain inadmissible under the Federal Rules of Civil Procedure, Federal Rule of Evidence 408, and any applicable state law or rule of procedure or evidence.  If for any reason the settlement is not granted preliminary and final approval, Defendants' agreement

to certification of the Class shall not be used for any purposes, including any request for class certification in the Litigation or any other proceeding.

Defendants deny all claims, liability, damages, losses, penalties, interest, fees, restitution and all other forms of relief that were or could have been sought in this Litigation, as well as all class allegations asserted in this Litigation.  Defendants have agreed to resolve this Litigation through this Agreement, but if this Agreement is deemed void or Final Approval does not occur, Defendants do not waive, but rather expressly reserve, all rights to challenge such claims and allegations in the Litigation on all procedural, evidentiary, and factual grounds, including, without limitation, the ability to challenge on any grounds whether a class can be certified and to assert any and all defenses or privileges.  The Class Representative and Class Counsel agree that Defendants retain and reserve all of these rights and agree not to take a position to the contrary.

## III.    Settlement Consideration

35.    The total cash consideration to be provided by Defendants to Settlement Class Claimants pursuant to the Settlement shall be $850,000.00.

36.    Settlement Costs shall be payable from the Settlement Fund. Class Counsel shall be responsible for supervising the Administrator Payments shall be made pursuant to a separate agreement with the Administrator.

## IV.    Settlement Approval

37.    Upon execution of this Agreement by all Parties, Class Counsel shall promptly move the Court for an Order granting Preliminary Approval of this Settlement ("Preliminary Approval Order").  The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and Defendants.  The motion for

Preliminary Approval shall request that the Court: (1) approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claims process; (5) approve the procedures for Settlement Class members to exclude themselves from the Settlement Class or to object to the Settlement; (6) stay the Action pending Final Approval of the Settlement; and (7) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Class Counsel and counsel for Defendants, at which the Court will conduct an inquiry into the fairness of the Settlement in accordance with Federal Rule of Civil Procedure 23(e), determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsel's application for attorneys' fees, costs and expenses and a Service Award to the Class Representative ("Final Approval Hearing").

## V.     NOTICE & CLAIM SETTLEMENT ADMINISTRATION

38.     The Parties have agreed to use Epiq as the Administrator, who shall administer the Settlement in a cost-effective and timely manner. Without limiting any of its other obligations as stated herein, the Administrator shall be responsible for, among other things and if and as necessary, for the implementation and effectuation of Class Notice, processing Claim Forms, receiving and maintaining on behalf of the Court any correspondence regarding requests for exclusion and/or objections to the Settlement, administering Claim Settlement Payments, and providing all other related support, reporting, and administration as further stated in this Agreement. The Parties may direct the

Administrator to assist with various additional administrative tasks in implementing the Settlement as the Parties agree is appropriate.

39.  The Parties will coordinate with the Administrator to provide E-mail and Mail Notice to the Settlement Class, as provided in this Agreement. The Administrator shall administer the Settlement in accordance with the terms of this Agreement and shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as Confidential Information except as provided for in this Agreement or by court order.

40.  All Notice, Claim Settlement, and Administrative Costs shall be paid from the Settlement Fund. Defendants shall not be obligated to compute, estimate, or pay any taxes on behalf of Plaintiff, any Settlement Class Member, Class Counsel, or the Administrator. The Administrator will invoice Defendants directly for start-up and initial Class Notice costs at any time after entry of the Preliminary Approval Order and will bill Defendants monthly for incurred fees and expenses thereafter. The Administrator will complete and provide to Defendants any W9 forms necessary for Defendants to pay for the Notice and Administrative Costs.

**VI.  Notice to the Settlement Class**

41.  The Parties shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order.  Any Notices provided under or as part of the Notice Program shall not bear or include Defendants' logos or trademarks or the return address of Defendants, or otherwise be styled to appear to originate from Defendants.  Ownership of the Settlement Website URL shall be transferred to Defendants within ten (10) days of the

date on which operation of the Settlement Website ceases, which shall be three months following distribution of the Net Settlement Fund to Settlement Class Claimants, or such other date as Class Counsel and Defendants may agree upon in writing.

42.    Within ten (10) days after entry of the Preliminary Approval Order, Defendant Classic Chevrolet, Inc., on behalf of all Defendants, will provide the Settlement Class Data in electronic format to the Administrator, if it has not already done so. Using the Settlement Class Data, the Administrator will determine the mailing addresses and/or email addresses associated with each of the telephone numbers of the Settlement Class Members.

43.    Notice shall be provided to Settlement Class Members in four different ways: (1) Email Notice, (2) Mailed Notice (for Settlement Class Members whose email addresses cannot be ascertained from the Settlement Class Data or those individuals for whom Email Notices have bounced back as undeliverable); (3) Long-Form Notice, as provided on the Settlement Website and to be sent to Settlement Class Members upon request; and (4) a Toll-free Telephone Number.  Not all Settlement Class Members will receive all forms of Notice.

44.    Email Notice: The Administrator shall administer the Email Notice Program, which shall consist of an email containing the Email Notice sent to all Settlement Class Members for whom  email addresses can reasonably ascertained from the Settlement Class Data. For those Settlement Class Members only, the Administrator, by the Class Notice Date, shall send one copy of the E-Mail Notice. The Email Notice Program shall be completed no later than 70 days before the Final Approval Hearing.  The Administrator shall provide Class Counsel and Defendants with an affidavit that confirms that Email Notice was given in accordance with the Email Notice Program.

45.    Mailed Notice: For Settlement Class Members whose email address cannot be reasonably

determined via the Class Settlement Data or for whom Email Notice bounces back or is otherwise undeliverable, the Administrator shall review Defendants' records, perform reverse telephone number look ups, shall run addresses through the National Change of Address Database, and shall, to the extent reasonably possible, mail to all Settlement Class Members for whom email addresses cannot be reasonably ascertained   postcards that contain details about the Settlement ("Initial Mailed Notice"). The Administrator shall also perform reasonable address traces for any individual to whom Mailed Notice is sent and returned as undeliverable. By way of example, a "reasonable" tracing procedure would be to run addresses through the LexisNexis database that can be utilized for such purpose. The Administrator shall complete the re-mailing of Mailed Notice to those Settlement Class members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process").  The Administrator's continued efforts in providing Mailed Notice to individuals for whom an email address cannot be reasonably be determined via the Class Settlement Data or for whom Email Notice bounces back or Mailed Notice is returned as undeliverable shall not affect or extend any Settlement Class member's deadlines for objecting or opting out. The Mailed Notice Program shall be completed no later than 45 days before the Final Approval Hearing.  The Administrator shall provide Class Counsel and  Defendants an affidavit that confirms that the Mailed Notice Program was completed in a timely manner and in accordance with the Mailed Notice Program.

46.    Long-Form Notice: E-Mail Notice will contain the address for the Settlement Website, www.CCTCPAsettlement.com.   On the website, Settlement Class members will find important documents and court filings, including the Long-Form Notice, which will contain more detail than the E-Mail Notice. The Long Form Notice will be sent to all

Settlement Class members who contact the Administrator by telephone or email and request a copy.

47.     Settlement Website: By the Class Notice Date, the Administrator shall establish and maintain the Settlement Website, which, among other things: (i) enables Settlement Class Members to access and download the Claim Form, (ii) provides contact information for Class Counsel, and (iii) provides access to relevant documents concerning the Action. Such documents shall include this Agreement and Class Notice; the Long-Form Notice, the Preliminary Approval Order; the Complaint; and, when filed, the Final Approval Order. The Class Notice shall include the URL address of the Settlement Website (www.CCTCPAsettlement.com). The Administrator shall maintain the Settlement Website until at least sixty (60) days following the Claim Deadline.

48.     Toll-free Telephone Number:  By the Class Notice Date, the Administrator shall establish and maintain a toll-free number that maintains an IVR (or similar) system to answer questions about the Settlement. The Administrator shall maintain the IVR (or similar) system until at least sixty (60) days following the Claim Deadline.

49.     CAFA Notice: The Administrator shall serve notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, within the timelines specified by 28 U.S.C. § 1715(b). Defendants will provide the Court with confirmation of service on or before the date of the Final Approval Hearing.

50.     Upon Preliminary Approval of the Settlement, at the direction of Class Counsel, the Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order.  The Notice shall include, among other information: a description of the material terms of the Settlement, including

how to file a Claim Form, a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information. Class Counsel and Defendants shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. Emailed and Mailed Notices shall not bear or include the Defendants logo or trademarks or the return address of Defendants, or otherwise be styled to appear to originate from Defendants. Ownership of the Settlement Website URL shall be transferred to Defendants within 10 days of the date on which operation of the Settlement Website ceases, which shall be three months following distribution of the Net Settlement Fund to Settlement Class Claimants, or such other date as Class Counsel and Defendants may agree upon in writing.

51.    The Notice shall include a procedure for Settlement Class members to opt-out of the Settlement Class. A Settlement Class member may opt-out of the Settlement Class at any time during the Opt-Out Period. Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement.

52.    The Notice shall include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and/or a Service Award to the Class Representative. Objections to the Settlement, to the application for fees, costs, expenses and/or for the Service Award must be in writing and mailed to the Clerk of the Court, Class Counsel, and Defendants' counsel. For an objection

to be considered by the Court, the objection must be submitted no later than the last day of the Opt-Out Period, as specified in the Notice.  If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope, mailed first-class postage prepaid and addressed in accordance with the instructions.  If submitted by private courier (*e.g.*, FedEx), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

53. The Parties will include in the motion for Preliminary Approval and draft order the following recommendations to the Court for the requirements for any objections to be valid and considered by the Court:

    a.  the name of the Action;

    b.  the objector's full name, address and telephone number;

    c.  an explanation of the basis upon which the objector claims to be a Settlement Class Member;

    d.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

    e.  the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such an objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

    f.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.  a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections made by individuals or organizations represented by that counsel or law firm that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

h.  any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

i.  the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

k.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

l.  the objector's signature (an attorney's signature is not sufficient).

54.  Within the parameters set forth in this Agreement, further specific details of the Notice Program shall be subject to the agreement of Class Counsel and Defendants.

## VII.  <u>Final Approval Order and Judgment</u>

55.  The Plaintiff's Motion for Preliminary Approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur.  Plaintiff shall file her Motion for Final Approval of the Settlement, and her application for attorneys' fees, costs, and expenses and for a Service Award for the Class Representative, no later than 45 days prior to the Final Approval Hearing.  At the Final Approval Hearing, the Court

will hear argument on Plaintiff's Motion for Final Approval of the Settlement, and on Class Counsel's application for attorneys' fees, costs, and expenses and for a Service Award for the Class Representative.  In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the fee, cost, expense or Service Award application, provided the objectors submitted timely written objections that meet all of the requirements listed in the preliminary approval order and notice.

56.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting Final Approval of the Settlement and entering final judgment thereon, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and a Service Award.  The proposed Final Approval Order shall be in a form agreed upon by Class Counsel and Defendants.  Such proposed Final Approval Order shall, among other things:

a.      Determine that the Settlement is fair, adequate and reasonable;

b.      Finally certify the Settlement Class for settlement purposes only;

c.      Determine that the Notice provided satisfies Due Process requirements;

d.      Enter judgment dismissing the Action with prejudice and without costs, except as set forth in this Agreement;

e.      Bar and enjoin all Releasing Parties from asserting any of the Released Claims, including during any appeal from the Final Approval Order;

f.      Release Defendants and the Released Parties from the Released Claims; and

g.      Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendants, all Settlement Class Members, and all objectors,

to administer, supervise, construe and enforce this Agreement in accordance with its terms.

## VIII.  Settlement Fund

57.   In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases and the dismissal of the Action with prejudice upon entry of Final Approval, within 30 calendar days of Preliminary Approval, Defendant Classic Chevrolet, Inc., on behalf of the Defendants, shall deposit into the Escrow Account the total sum of $569,500 less any amounts already advanced by Defendants to the Administrator. In no event shall Defendants be responsible for any claims, fees, or Settlement Costs exceeding the amount of the Settlement Fund.

58.   Upon the establishment of the Escrow Account, the Escrow Agent may, but shall not be required to, cause the funds in the Escrow Account to be invested, in whole or in part, in interest-bearing short-term instruments or accounts—to be agreed upon by Class Counsel and Defendants —that are backed by the full faith and credit of the United States Government or that are fully insured by the United States Government or an agency thereof (the "Instruments").  The Escrow Agent may thereafter re-invest the interest proceeds and the principal as they mature in similar Instruments, bearing in mind the liquidity requirements of the Escrow Account to ensure that it contains sufficient cash available to pay all invoices, taxes, fees, costs and expenses, and other required disbursements, in a timely manner.  Notwithstanding the foregoing, that portion of the Settlement Fund that the Administrator reasonably estimates needs to be available on a liquid basis to pay on-going costs of settlement administration, as provided in this Agreement, may be placed in one or more insured accounts that may be non-interest-bearing. Except as otherwise

specified herein, the Instruments at all times will remain in the Escrow Account and under the control of the Escrow Agent. The Escrow Agent shall communicate with Class Counsel and counsel for Defendants on at least a monthly basis to discuss potential cash needs for the following month. All costs or fees incurred in connection with investment of the Settlement Fund in the Instruments shall not constitute a cost of settlement administration to be paid by Defendants but shall instead be payable out of the Settlement Fund.

59.    The Settlement Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Defendants or its counsel, or Plaintiff or Class Counsel, with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund. Plaintiff and Class Counsel, and Defendants and their counsel, shall have no liability or responsibility for any of the Taxes. The Settlement Fund shall indemnify and hold Plaintiff and Class Counsel, and Defendants and their counsel, harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

60.    The Settlement Fund shall be used for the following purposes:

    a.    Distribution of Settlement Fund Payments to Settlement Class Claimants;

    b.    Payment of any and all Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses;

    c.    Payment of any Court-ordered Service Award to the Class Representative;

d.    Payment of any secondary and/or residual distribution, together with any administrative costs associated therewith;

e.    Payment of all Taxes, including, without limitation, taxes owed as a result of accrued interest on the Escrow Account, subject to approval by Class Counsel and Defendants; and

f.    Payment of additional fees, costs and expenses not specifically enumerated in subparagraphs (a) through (e) of this paragraph, subject to approval of Class Counsel and Defendants.

## IX.    **Calculation of Distributions from Settlement Fund**

61.    Each Settlement Class member who timely files with the Administrator a valid Claim Form shall automatically receive a cash distribution payable by check.  The amount of each cash distribution shall be determined by the following formula: Net Settlement Fund divided by total number of Settlement Class Members = Settlement Fund Payment.

## X.    **Distribution of Settlement Fund, Disposition of Residual Funds**

62.    The Administrator shall distribute the funds in the Settlement Fund in the following order and within the time period set forth with respect to each such payment:

a.    First, to the Class Representative, any Service Award.

b.    No later than 45 days following the Effective Date, the Settlement Class Claimants shall be sent their Settlement Fund Payments, after payment of notice and administration costs, attorneys' fees and costs, and incentive award;

c.    Class Counsel will receive payment for its attorney's fees and costs, the total amount of which will be payable in equal monthly installments with full amount being paid in full by no later than nine (9) months after the date Final Approval is entered by the Court with the

first payment beginning on the 1st of the next month following the date of Final Approval.

d. Four months after the date the Administrator mails the first round of Settlement Fund Payments, any residual funds in the Settlement Fund shall be distributed as follows:

   i. First, any Settlement Fund Payments that remain uncashed after 180 days from issuance shall be remitted to Defendant Classic Chevrolet, Inc. prior to any second distribution to the Settlement Class Members as a credit up to the amount of Administration Costs.

   ii. Second, any remaining funds shall be distributed on a *pro rata* basis to participating Settlement Class Claimants who received and cashed Settlement Fund Payments, to the extent feasible and practical in light of the costs of administering such subsequent payments, unless other specific reasons exist that would make such further distributions impossible or unfair;

   iii. Finally, in the event the costs of preparing, transmitting and administering such subsequent payments are not feasible and practical to make individual distributions or other specific reasons exist that would make such further distributions impossible or unfair, Class Counsel and Defendants shall file recommendations with the Court for distribution of the residual funds consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c), together with supporting materials. The Court shall have the discretion to approve, deny, amend or modify, in whole or in part, the proposed recommendations for distribution of the residual funds in a manner consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c). The Parties agree that any residual funds shall not be used for any litigation purpose or to disparage any Party. The Parties further agree that the

Court's approval, denial, amendment or modification, in whole or in part, of the recommendations for distribution of the residual funds pursuant to this paragraph shall not constitute grounds for termination of the Settlement pursuant to this Agreement; and

iv.    All costs associated with the disposition of residual funds – whether through additional distributions to Settlement Class Claimants and/or through an alternative plan approved by the Court – shall be borne solely by the Settlement Fund.

## XI.    <u>**Claims Process**</u>

63.    Each member of the Settlement Class who does not timely opt-out from the Settlement shall be a Settlement Class Member and entitled to make a Claim.  Each Settlement Class Member shall be entitled to make one Claim per associated unique cellular telephone number that received a Message, regardless of the number of Messages the Settlement Class Member received.

64.    To make a Claim, Settlement Class members must submit by the Claims Deadline a valid and timely Claim Form, a copy of which is attached hereto as Exhibit 4 (and incorporated into the Mailed Notice and Email Notice), by U.S. mail or through the Settlement Website. The Claim Form shall contain the Settlement Class member's: (1) name; (2) current address; (3) cellular telephone number(s) at which she or he was sent a Message; (4) a current contact telephone number; and (5) representation under oath that he or she received a Message.  If a Settlement Class member fails to fully complete a Claim Form, the Claim Form will be invalid and rejected by the Administrator.  The Administrator will then attempt to notify the Settlement Class member that his or her Claim Form was deficient and rejected. Any Settlement Class member who submits an incomplete or inaccurate

Claim Form shall be permitted to re-submit a Claim Form by the later of the Claims Deadline or 15 days of the sending of notice of the defect by the Administrator.

65.     Settlement Fund Payments shall be sent to Settlement Class Claimants by the Administrator via U.S. mail.  If any Settlement Fund Payments are returned, the Administrator shall attempt to obtain a new mailing address for that Settlement Class Claimant.  If after a second mailing, the Settlement Fund Payment is again returned, no further efforts need be taken by the Administrator to resend the check.  Each Settlement Fund Payment will be negotiable for 90 days after it is issued.

**XII.   Releases**

66.     Upon the Effective Date of the Settlement, Plaintiff and all Settlement Class Members, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors (hereinafter each individually referred to as a "Releasor"), shall automatically be deemed to have fully and irrevocably released and forever discharged Defendants, each of their  parent companies, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors and officers, including each of Defendants' employees, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, agents, independent contractors, text messaging service providers, including but not limited to DoCircle, Inc. d/b/a Trumpia, wholesalers, resellers, distributors, retailers, predecessors, successors, vendors, other third-party service providers and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or

relate to the conduct, omissions, duties or matters at any time from the beginning of the Class Period through the date an order preliminary approving the Settlement Agreement is entered by the Court, that were or could have been claimed, raised, or alleged in this Action to the extent they arise from or relate to Messages sent by or on behalf of Defendants (hereinafter the "Released Claims").

67.    Each Releasor waives California Code Section 1542 and similar provisions in other states. Each Releasor hereby certifies that he, she or it is aware of and has read and reviewed the following provision of California Code 1542 (Section 1542):

> A general release does not extend to claims that the creditor or recovering party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her would have materially affected his or her settlement with the debtor or releasing party.

68.    The provisions of the Class Release shall apply according to their terms, regardless of the provisions of Section 1542 or any equivalent, similar or comparable present or future law or principle of law of any jurisdiction.

70.    Each Releasor waives any and all defenses, rights and benefits that may be derived from the provision of applicable law in any jurisdiction that, absent such waiver, may limit the extent or effect of the release contained in this Agreement.

71.    The Parties and each member of the proposed Settlement Class agree that amounts to be paid under this Agreement to each Settlement Class Member represent the satisfaction of that Settlement Class Member's claims for Released Claims.  No portion of such settlement represents the payment of punitive or exemplary damages.  Nonetheless, in consideration for the satisfaction of each Settlement Class Member's claim for compensatory damages, claims for punitive or exemplary damages arising from the Released Claims shall be released.

**XIII.    Payment of Attorneys' Fees, Costs, and Service Awards**

72.    Defendants agree not to oppose Class Counsel's request for attorneys' fees of up to 33.33% of the Settlement Fund and not to oppose Class Counsel's request for reimbursement of costs and expenses.  Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund.  The determination of Class Counsel's request for attorneys' fees shall be based on controlling Tenth Circuit precedent involving the award of fees in common fund class actions and not based on state law.  The Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination.

73.    Defendants shall have no responsibility for any allocation, and no liability whatsoever to any person or entity claiming any share of the funds to be distributed.

74.    Class Counsel will ask the Court to approve an Incentive Award/Service Award to Plaintiff of $5,000.  The Service Award is to be paid from the Settlement Fund.  The Service Award shall be paid to the Class Representative in addition to the Class Representative's Settlement Fund Payment.  Defendants agree not to oppose Class Counsel's request for the Service Award.

75.    The Parties negotiated and reached agreement regarding attorneys' fees and costs, and the Service Award, only after reaching agreement on all other material terms of this Settlement.

**XIV.    Termination of Settlement**

76.    This Settlement may be terminated by either Class Counsel or Defendants by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 30 days (or such longer time as may be agreed in writing between Class Counsel

and Defendants) after any of the following occurrences:

a.     the Court fails to preliminarily approve the Settlement within 180 days after filing of the motion for preliminary approval, or fails to finally approve the Settlement within 360 days of Preliminary Approval by the Court;

b.     an appellate court vacates or reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand within 270 days of such reversal;

c.     if the number of opt outs exceed 100 and Defendants, within 10 days of the Opt Out deadline, gives written notice of its decision to void the settlement; or

d.     the Effective Date does not occur.

## XV.   **Effect of a Termination**

77.    In the event of a termination, this Agreement shall be considered null and void; all of Plaintiff's, Class Counsel's, and Defendants' obligations under the Settlement shall cease to be of any force and effect; the amounts in the Settlement Fund shall be returned to Defendants; and the Parties shall return to the status *quo ante* in the Action as if the Parties had not entered into this Agreement.  In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims and defenses will be retained and preserved.

78.    In the event of a termination as, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid by Defendants, pursuant to its obligation to pay settlement expenses directly, the Escrow Agent shall return the balance of the Settlement Fund to Defendants within 5 business days of termination.

79.    The Settlement shall become effective on the Effective Date unless earlier terminated.

80.     In the event the Settlement is terminated, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose.  In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

## XVI.  **No Admission of Liability; Non-Disparagement**

81.     Defendants continue to dispute their liability for the claims alleged in the Action, and maintain that they complied, at all times, with applicable laws and regulations.  Defendants do not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Defendants have agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

82.     Class Counsel believes that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims and conducted extensive discovery.

83.     Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

84.     The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in

connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever.

85.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiff or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

86.     In addition to any other defenses Defendants may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement or the Class Releases contained herein.

**XVII.    <u>Miscellaneous Provisions</u>**

87.     <u>Gender and Plurals</u>.  As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

88.     <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

89.     <u>Cooperation of Parties</u>.  The Parties to this Agreement agree to cooperate in good faith to

prepare and execute all documents, to seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.  This obligation of the Parties to support and complete the Settlement shall remain in full force and effect regardless of events that may occur.

90.    <u>Obligation To Meet And Confer</u>.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

91.    <u>Integration</u>.  This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

92.    <u>No Conflict Intended</u>.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

93.    <u>Governing Law</u>.  Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the State of Oklahoma, without regard to the principles thereof regarding choice of law.

94.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

95.    <u>Jurisdiction</u>.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action,

proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice program, the Administrator, and the Escrow Agent. As part of their respective agreements to render services in connection with this Settlement, the Administrator, and the Escrow Agent shall consent to the jurisdiction of the Court for this purpose.

96.    <u>Notices</u>.  All notices to Class Counsel provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

> Scott Edelsberg, Esq.
> Edelsberg Law, P.A.
> 20900 NE 30th Avenue, Suite 417
> Aventura, FL 33180
> Email: <u>Scott@Edelsberglaw.com</u>

All notices to Defendants, provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

> John T. Richer, Esq.
> Hall Estill
> 320 S. Boston Ave., Suite 300
> Tulsa, OK 74103
> Email: <u>JRicher@HallEstill.com</u>

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any Party, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice program.

97.    <u>Modification and Amendment</u>.  This Agreement may not be amended or modified, except

by a written instrument signed by Class Counsel and counsel for Defendants and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

98.    <u>No Waiver</u>.  The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

99.    <u>Authority</u>.  Class Counsel (for the Plaintiff and the Settlement Class Members), and counsel for Defendants, represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity included within the definitions of Plaintiff and Defendants to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

100.    <u>Agreement Mutually Prepared</u>.  Neither Defendants nor Plaintiff, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

101.    <u>Independent Investigation and Decision to Settle</u>.  The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this

Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

102.    <u>Receipt of Advice of Counsel</u>.  Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement and the Release, received independent legal advice with respect to the advisability of entering into this Agreement and the Release and the legal effects of this Agreement and the Release, and fully understands the effect of this Agreement and the Release.

103.    Class Counsel will return or destroy all copies of discovery materials obtained in this litigation from Defendants or third parties within thirty (30) days after the Effective Date.

(signatures on following page)

Dated: _____        _____
                                          Jennifer King
                                          *Plaintiff*


Dated: _____        _____
                                          Scott Edelsberg
                                          *Class Counsel*


Dated: ___4-21-20_____       _____
                                          Print Name: _L KEITH HANEY_
                                          *Authorized Representative of Defendants, Classic*
                                          *Chevrolet, Inc.; Bartlesville CDJ, LLC; Bixby Auto*
                                          *Plaza, LLC; Miami Auto Supercenter, Inc.; Nissan*
                                          *of Muskogee LLC; Regional Hyundai LLC;*
                                          *Suburban Chevrolet, Inc.; Tulsa Raceway Park,*
                                          *LLC; and WKW Acquisitions LLC d/b/a Honda of*
                                          *Muskogee.*


Dated: _____        _____
                                          John. T. Richer
                                          *Counsel for Defendants, Classic Chevrolet, Inc.;*
                                          *Bartlesville CDJ, LLC; Bixby Auto Plaza, LLC;*
                                          *Miami Auto Supercenter, Inc.; Nissan of Muskogee*
                                          *LLC; Regional Hyundai LLC; Suburban Chevrolet,*
                                          *Inc.; Tulsa Raceway Park, LLC; and WKW*
                                          *Acquisitions LLC d/b/a Honda of Muskogee.*

Dated: **Apr 20, 2020**

Jennifer King Apr 20, 2020

Jennifer King
*Plaintiff*

Dated: _____

_____
Scott Edelsberg
*Class Counsel*

Dated: _____

_____
Print Name: _____
*Authorized Representative of Defendants, Classic
Chevrolet, Inc.; Bartlesville CDJ, LLC; Bixby Auto
Plaza, LLC; Miami Auto Supercenter, Inc.; Nissan
of Muskogee LLC; Regional Hyundai LLC;
Suburban Chevrolet, Inc.; Tulsa Raceway Park,
LLC; and WKW Acquisitions LLC d/b/a Honda of
Muskogee.*

Dated: _____

_____
John. T. Richer
*Counsel for Defendants, Classic Chevrolet, Inc.;
Bartlesville CDJ, LLC; Bixby Auto Plaza, LLC;
Miami Auto Supercenter, Inc.; Nissan of Muskogee
LLC; Regional Hyundai LLC; Suburban Chevrolet,
Inc.; Tulsa Raceway Park, LLC; and WKW
Acquisitions LLC d/b/a Honda of Muskogee.*

## ADDENDUM TO SETTLEMENT AGREEMENT

This Addendum is made and entered into this ___ day of May 2020 between Plaintiff Jennifer King, on behalf of herself and the Settlement Class, and Defendant Classic Chevrolet, Inc.; Defendant Bartlesville CDJ, LLC; Defendant Bixby Auto Plaza, LLC; Defendant Miami Auto Supercenter, Inc.; Defendant Nissan of Muskogee LLC; Defendant Regional Hyundai LLC; Defendant Suburban Chevrolet, Inc.; Defendant T & K Management Group, LLC d/b/a Tulsa Raceway Park; and Defendant WKW Acquisitions LLC d/b/a Honda of Muskogee (collectively, the "Defendants").

1.    **RECITALS**

WHEREAS the Parties executed the Settlement Agreement on or about April 21, 2020 to resolve the Lawsuit;

WHEREAS the Parties stipulate that a clerical error appears in the Settlement Agreement as to Defendant Tulsa Raceway Park, LLC;

WHEREAS the Parties acknowledge that T & K Management Group, LLC d/b/a Tulsa Raceway Park is the proper Defendant which the Parties intended to be bound by the Settlement Agreement.

WHEREAS the Parties stipulate to substitute T & K Management Group, LLC d/b/a Tulsa Raceway Park in the place of Tulsa Raceway Park, LLC for all purposes in the Settlement Agreement.

Now, therefore, the Parties agree as follows:

2.    **ADOPTION OF THE SETTLEMENT AGREEMENT AND ADDENDUM**

The foregoing recitals are incorporated herein by this reference with the same force and effect as if they were set forth in the Settlement Agreement.

The Parties hereby reaffirm, ratify, and acknowledge each and every term, condition, acknowledgement, statement, waiver, representation, covenant, consent, and agreement set forth in the Settlement Agreement, as amended by this Addendum.

***[Signature Pages to Follow]***

IN WITNESS WHEREOF, all parties execute this Addendum to the Settlement Agreement on the date designated below:

Date: _May 16, 2020_                    Consented and Agreed to:

By: Jennifer King
Plaintiff

By: Scott Edelsberg
Class Counsel

Print Name: _Keith Harvey_
Authorized Representative of Defendants, Classic Chevrolet, Inc.; Bartlesville CDJ, LLC; Bixby Auto Plaza, LLC; Miami Auto Supercenter, Inc.; Nissan of Muskogee LLC; Regional Hyundai LLC; Suburban Chevrolet, Inc.; T & K Management Group, LLC d/b/a

2

Tulsa Raceway Park; and WKW Acquisitions LLC d/b/a Honda of Muskogee.

By: John. T. Richer
Counsel for Defendants, Classic Chevrolet, Inc.; Bartlesville CDJ, LLC; Bixby Auto Plaza, LLC; Miami Auto Supercenter, Inc.; Nissan of Muskogee LLC; Regional Hyundai LLC; Suburban Chevrolet, Inc.; T&K Management Group, LLC; and WKW Acquisitions LLC d/b/a Honda of Muskogee.

3